IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID VANVALKENBURG,                        3:14-cv-00916-BR

          Plaintiff,                        OPINION AND ORDER

v.

OREGON DEPARTMENT OF
CORRECTIONS,

          Defendant.


**MATTHEW C. ELLIS**
Law Office of Matthew C. Ellis
621 S.W. Morrison Street
Suite 1050
Portland, OR 97205
(503) 226-0072

**SHENOA L. PAYNE**
Hagglund Kelly, LLP
200 S.W. Market Street
Suite 1777
Portland, OR 97201
(503) 225-0777

          Attorneys for Plaintiff


1 - OPINION AND ORDER

**ELLEN F. ROSENBLUM**
Attorney General
**HEATHER J. VAN METER**
**SHANNON M. VINCENT**
Senior Assistant Attorneys General
Oregon Department of Justice
1162 Court Street N.E.
Salem, OR 97301
(503) 947-4700

          Attorneys for Defendant

**JESSE A. MERRITHEW**
Levi Merrithew Horst, LLP
610 S.W. Alder Street, Suite 415
Portland, OR 97205
(971) 229-1241

          Attorneys for Amicus HEARD


**BROWN, Judge.**

     This matter comes before the Court on Defendant Oregon

Department of Corrections' Motion (#49) for Summary Judgment,

Defendant's Second Motion (#64) for Partial Summary Judgment, and

Plaintiff David VanValkenburg's Motion (#72) for Partial Summary

Judgment.

     For the reasons that follow, the Court **GRANTS in part**

and **DENIES in part** Defendant's Motion (#49) for Summary Judgment

and Defendant's Second Motion (#64) for Partial Summary Judgment

as follows:

     1.   The Court **GRANTS** Defendant's Motion (#49) as to

Plaintiff's claims for injunctive relief and **DISMISSES** those

claims **with prejudice**;

2 - OPINION AND ORDER

2.   The Court **GRANTS** Defendant's Second Motion (#64) as to the statute of limitations on Plaintiff's Claim One and limits recovery on Plaintiff's Claim One to those instances of alleged disability discrimination that occurred on or after September 23, 2013;

3.   The Court **GRANTS in part** and **DENIES in part** Defendant's Second Motion (#64) as to the statute of limitations on Plaintiff's Claim Two and limits recovery on Plaintiff's Claim Two to those instances of alleged disability discrimination that occurred on or after May 5, 2012;

4.   The Court **DENIES** Defendant's Motion (#49) as to Plaintiff's claim for noneconomic damages in Claim One; and

5.   The Court **GRANTS in part** and **DENIES in part** Defendant's Motion (#49) as to the limitations on Claim Two pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, and **DISMISSES with prejudice** Plaintiff's Claim Two to the extent he seeks emotional-distress damages.

The Court also **DENIES** Plaintiff's Motion (#72) for Partial Summary Judgment.

## BACKGROUND

The following facts are undisputed and taken from the record on summary judgment:

Defendant took Plaintiff into custody in November 2000, and,

3 - OPINION AND ORDER

after Plaintiff instituted this action in June 2014, Plaintiff was released from custody on December 1, 2014.  Plaintiff has a significant hearing impairment, but the extent of Plaintiff's impairment is a matter of dispute between the parties.[1]

During most of his time in Defendant's custody, Plaintiff was housed at Snake River Correctional Institution (SRCI), but he was also incarcerated for various periods at Oregon State Penitentiary, Oregon State Correctional Institution, Santiam Correctional Institution, and Columbia River Correctional Institution.

Defendant offers religious services, educational classes, work opportunities, and medical and dental services to inmates in its custody, and all inmates receive a counselor assessment when they first come into Defendant's custody.

At the assessment during Plaintiff's initial intake into Defendant's custody, Plaintiff's mental-health services provider noted Plaintiff was "significant[ly] hearing-impaired" and "needed to have most questions written for him despite being able to read lips."

On November 20, 2003, approximately two years after Plaintiff entered Defendant's custody, Plaintiff submitted an

---

[1] For ease of reference the Court will refer to Plaintiff's hearing impairment as "deafness."  By doing so, however, the Court does not make any determination regarding the extent of Plaintiff's hearing impairment at this stage of the proceedings.

Inmate Discrimination Complaint (IDC) in which he stated he received a disciplinary sanction as a result of his inability to communicate with officers and in which he requested permission to "carry paper and pen" and to have an interpreter.  On January 14, 2004, Defendant rejected Plaintiff's IDC on the basis that the available information "indicate[d] that [Plaintiff] did understand what the Officer said and failed to follow the Officer's direction."  Plaintiff appealed this decision on January 9, 2014, but the record does not reflect the disposition of that appeal or whether Plaintiff filed a tort-claim notice regarding that incident.

On November 22, 2003, Plaintiff filed another IDC in which he alleged he was not provided sufficient access to a TTY telephone and in which he requested the same access to the TTY telephone as other inmates have to traditional telephones without having to make an appointment or to submit a written request. Defendant did not find any discrimination as to Plaintiff's access to a TTY telephone because it was available during the same hours as the regular telephones and, although the TTY telephone required staff assistance, Defendant asserted "every effort is made to accommodate your access as quickly as possible."  Plaintiff did not appeal the disposition of this IDC or file a tort-claim notice regarding the IDC.

Plaintiff filed another IDC on October 23, 2008, in which he

asserted he was being discriminated against because Defendants
had denied him an ear piece that he needed to "hear well."
Defendant rejected Plaintiff's IDC on the basis that Defendant
provided him "with a full-time live-in helper" and Health
Services "authorized repair parts for [Plaintiff's] hearing
aids." Plaintiff appealed the denial. On March 16, 2009,
Defendant rejected Plaintiff's appeal. Plaintiff did not
immediately file a tort-claim notice.

On March 11, 2013, Plaintiff sent an Inmate Communication
Form (also known as a "kyte") to Defendant in which Plaintiff
requested an interpreter for a yoga class that he was taking
because he could not understand many of the instructions.
Defendant responded it could only hire interpreters for a
"required program."

On March 19, 2013, Plaintiff sent a kyte to Defendant in
which Plaintiff requested an interpreter for job classes to help
Plaintiff obtain better employment within the prison system.
Defendant initially responded it would look into the availability
of interpreters for job classes, but on May 10, 2013, Defendant
again stated an interpreter would only be provided for required
programs.

Plaintiff submitted an IDC dated June 3, 2013, in which
Plaintiff stated Defendant discriminated against him by denying
him a qualified interpreter for classes that he wanted to take

and for other programs.  In that IDC Plaintiff listed the date
and time of the incident as May 9, 2013.  On January 21, 2014,
Plaintiff sent a kyte to Defendant in which he attached the
June 3, 2013, IDC and stated he sent it to Defendant in May 2013,
but he had not heard back.  Plaintiff's IDC is stamped received
by Defendant on January 29, 2014.  Defendant denied the IDC on
the basis that it was received more than 30 days after the
incident date and stated "[t]here is no record of [Plaintiff]
submitting a discrimination complaint prior to January 29, 2014,
nor is there record of any follow-up by [Plaintiff] prior to
January 29, 2014."  The record does not reflect Plaintiff
appealed the denial of this IDC.

Nonetheless, on March 21, 2014, Plaintiff sent to Defendant
a tort-claim notice in which he contended Defendant had
systematically and continuously discriminated against Plaintiff
on the basis of his deafness by failing to provide Plaintiff with
a qualified, noninmate interpreter and, therefore, did not allow
Plaintiff equal access to Defendant's programs, services, and
activities.

Plaintiff instituted an action in the Circuit Court of the
State of Oregon for Multnomah County on May 5, 2014, which
Defendant removed to this Court on June 6, 2014, on the basis of
federal-question, subject-matter jurisdiction.

Plaintiff was released from Defendant's custody on

December 1, 2014, and thereafter Plaintiff filed a Second Amended Complaint that was identical to his First Amended Complaint except in the Second Amended Complaint Plaintiff alleged he had been released from Defendant's custody and Plaintiff omitted a previously-included allegation that Plaintiff suffered physical injury as a result of Defendant's failure to accommodate Plaintiff's deafness.

Plaintiff brings two claims against Defendant in his Second Amended Complaint (#43).  In Claim One Plaintiff alleges Defendant discriminated against Plaintiff on the basis of his disability in violation of Oregon Revised Statute § 659A.142 when Defendant failed to provide Plaintiff with a qualified, non-inmate interpreter (and often relied on untrained inmate interpreters) for various services, work and educational opportunities, disciplinary proceedings, counseling sessions, and medical and dental appointments.  In Claim Two Plaintiff brings a claim under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-12165, *et seq.*, based on the same conduct described in Claim One.  Plaintiff seeks $450,000.00 in compensatory damages and also seeks injunctive relief regarding the accommodations that Defendant provides deaf inmates and the policies that govern effective communication with deaf inmates.

## STANDARDS

Summary judgment is appropriate when there is not a "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a). The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). *See also Emeldi v. Univ. of Or.,* 673 F.3d 1218, 1223 (9th Cir. 2012). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and point to "specific facts demonstrating the existence of general issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) "This burden is not a light one . . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id.* (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn

from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936*, 680 F.2d 594, 598 (9th Cir. 1982)).

A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011)(citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)). *See also Moore v. Potter*, 701 F. Supp. 2d 1171 (D. Or. 2010). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

## DISCUSSION

I.  **Defendant's Motion (#49) for Summary Judgment and Second Motion (#64) for Partial Summary Judgment**

Defendant moves for summary judgment on the basis that (1) Plaintiff's requested injunctive relief is moot; (2) Plaintiff's claims are barred by the applicable statutes of limitations; (3) Plaintiff cannot seek noneconomic damages on Claim One pursuant to Oregon Revised Statute § 30.650 because he has not suffered any economic damages; (4) Plaintiff cannot seek emotional-distress damages on Claim Two under the PLRA, 42 U.S.C. § 1997e(e); and (5) Plaintiff failed to exhaust his administrative remedies on Claim Two as required by the PLRA, 42 U.S.C. § 1997e(a).

### A.  **Plaintiff's Standing to Seek Injunctive Relief**

Defendant first contends Plaintiff no longer has standing to pursue his claims for injunctive relief because Plaintiff has now been released from custody, and, therefore, there is not a sufficient likelihood that Plaintiff will again be injured by Defendant's allegedly unlawful conduct.

To establish Article III standing to seek prospective relief such as an injunction, a plaintiff must demonstrate "he faces imminent injury on account of the defendant's conduct." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010). "Past exposure to harmful or illegal conduct does not necessarily

confer standing to seek injunctive relief if the plaintiff does
not continue to suffer adverse effects." *Id.* After "a plaintiff
has been wronged, he is entitled to injunctive relief only if he
can show that he faces a 'real or immediate threat . . . that he
will again be wronged in a similar way.'" *Id.* (quoting *City of
Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). "'The requisite
personal interest that must exist at the commencement of the
litigation . . . must continue throughout its existence.'"
*Incumaa v. Ozmint*, 507 F.3d 281, 286 (4th Cir. 2007)(quoting
*Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.2
(1997))(ellipses in original). *See also Sanford v. MemberWorks,
Inc.*, 625 F.3d 550, 556 (9th Cir. 2010).

"'An inmate's release from prison while his claims are
pending generally will moot any claims for injunctive relief
relating to the prison's policies unless the suit has been
certified as a class action.'" *Alvarez v. Hill*, 667 F.3d 1061,
1064 (9th Cir. 2012)(quoting *Dilley v. Gunn*, 64 F.3d 1365, 1368
(9th Cir. 1995)). "The reason is that the released inmate is no
longer subject to the prison conditions or policies he
challenges." *Alvarez*, 667 F.3d at 1064. Any prospective relief
sought must have a "practical impact on the inmate's rights" and
redress the injury originally asserted. *Incumaa*, 507 F.3d at
287. *See also Alvarez*, 667 F.3d at 1064.

Here Plaintiff contends his claims for injunctive relief are

not moot under *United States v. Howard*, 480 F.3d 1005 (9th Cir. 2007), because he challenges an ongoing policy to which other deaf inmates will continue to be subjected.

In *Howard* the Ninth Circuit held criminal defendants seeking review of a policy that required leg restraints during defendants' initial appearances could seek injunctive relief because it presented a controversy that was "'capable of repetition, yet evading review.'" 480 F.3d at 1009 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975)). The Ninth Circuit noted it had previously "held that a case is capable of repetition when the defendants are challenging an ongoing government policy." *Howard*, 480 F.3d at 1010. Thus, Plaintiff contends his claim for injunctive relief remains viable.

In *Alvarez*, however, the Ninth Circuit substantially limited its broad statement in *Howard* when it noted: "We have never applied *Howard* beyond such circumstances involving short-lived pretrial proceedings in criminal prosecutions, where civil class actions would not be conducive to obtaining the relief sought." *Alvarez*, 667 F.3d at 1065. In *Alvarez* an inmate alleged an Oregon Department of Corrections policy burdened his practice of the Native American religion in violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA). *Id.* at 1063. The plaintiff filed his lawsuit against ODOC in June 2004, and he was released from incarceration in 2007 during the pendency of

the lawsuit. *Id.* at 1063-64. The Ninth Circuit ultimately concluded the *Howard* rule did not apply and that plaintiff's claim for injunctive relief was moot because "[t]here is nothing in the record to suggest that these other inmates would generally be unable to litigate their RLUIPA claims to completion, and to do so as a class action if they so chose." *Id.* at 1065. The Ninth Circuit in *Alvarez*, therefore, concluded the *Howard* rule does not permit a plaintiff to seek prospective relief by challenging an ongoing government policy that no longer applies to that plaintiff even though the policy may apply to other potential plaintiffs who could litigate their own claims.

The Court concludes this case is controlled by *Alvarez* because other deaf inmates who are currently subject or may become subject to the allegedly unlawful practices and policies that Plaintiff challenges in this action can bring their own claims. As the Ninth Circuit implied in *Alvarez*, unlike pretrial detention or a policy of shackling criminal defendants at their initial appearance, policies that apply to incarceration are not so inherently transitory as to render them capable of repetition while evading review.

On this record, therefore, the Court concludes Plaintiff's Claims One and Two are moot to the extent that Plaintiff seeks injunctive relief because he has been released from Defendant's custody. The Court, therefore, dismisses with prejudice these

portions of Plaintiff's Claims One and Two.

**B.    Statute of Limitations**

Defendant also moves for summary judgment on the basis that Plaintiff's claims are barred by the relevant statutes of limitations.

### 1.    Claim One – Oregon Revised Statute § 659A.142

Defendant contends Plaintiff's claim under § 659A.142(5) is governed by the one-year statute of limitations in Oregon Revised Statute § 659A.875(6) and the 180-day limitation in the tort-claim notice provision of the Oregon Tort Claims Act (OTCA), Oregon Revised Statute § 30.265(2). Plaintiff, on the other hand, contends Claim One is subject to the two-year personal-injury statute of limitations contained in Oregon Revised Statute § 12.110(1), and, in any event, none of Claim One is barred by the statute of limitations under Oregon's continuing-tort doctrine.

### a.    Applicable Statute of Limitations

As noted, Defendant contends the one-year statute of limitations in § 659A.875(6) applies to Plaintiff's disability-discrimination claim under § 659A.142(5).  Section 659A.875(6) provides:  "Notwithstanding ORS § 30.275(9), a civil action under ORS § 659A.885 against a public body . . . based on an unlawful employment practice must be commenced within one year after the occurrence of the unlawful employment practice unless a

15- OPINION AND ORDER

complaint has been timely filed under ORS § 659A.820." Section 659A.885, in turn, provides the cause of action for violations of § 659A.142. Accordingly, Defendant contends the one-year statute of limitations contained in § 659A.875(6) applies to Plaintiff's claim under § 659A.142. On the other hand, Plaintiff, as noted, contends the appropriate statutory period is the two-year statute of limitations contained in § 12.110(1).

By its terms § 659A.875(6) only applies to lawsuits brought under one of the specified statutes against a public body "based on an unlawful employment practice." Plaintiff's Claim One, however, is not "based on an unlawful employment practice." *See* Or. Rev. Stat. § 659A.875(6). Accordingly, the Court concludes the one-year statute of limitations contained in § 659A.875(6) does not apply to Plaintiff's Claim One.

Plaintiff's Claim One, however, is against a state entity, and, therefore, the Court concludes the two-year statute of limitations contained in the OTCA, Oregon Revised Statute § 30.275(9), is the applicable statute of limitations and Plaintiff's Claim One is governed by the OTCA's tort-claim notice requirement. The OTCA requires a plaintiff to provide notice to the relevant agency of any tort claim "within 180 days after the alleged loss or injury." Or. Rev. Stat. § 30.275(2). The Court notes September 23, 2013, was 180 days before Plaintiff's March

21, 2014, tort-claim notice.

       b.   Continuing-Tort Doctrine

       Plaintiff, nonetheless, contends neither the statute of limitations nor the tort-claim notice requirement limit Claim One because Claim One is a continuing tort.

       "A continuing tort is based on 'the concept that recovery is for the cumulative effect of wrongful behavior, not for discrete elements of that conduct.'" *Barrington ex rel. Barrington v. Sandberg*, 164 Or. App. 292, 296 (1999)(quoting *Davis v. Bostick*, 282 Or. 667, 671 (1978)). *See also Boardmaster Corp. v. Jackson Cnty.*, 224 Or. App. 533, 549-50 (2008). Thus, the continuing-tort doctrine does not apply when acts are "separately actionable because they individually caused harm" even if those acts are "all of a piece in intent and content." *Barrington*, 164 Or. App. at 296-97.

       In *Davis* the Oregon Supreme Court held the continuing-tort doctrine did not apply to a plaintiff's intentional infliction of emotional-distress claim that stemmed from several incidents of physical and emotional spousal abuse. 282 Or. at 669. Some of these incidents of abuse occurred outside of the relevant statute of limitations. *Id.* at 669-70. The court, however, held the plaintiff's "theory is that she ought to recover now for a series of wrongs, but her evidence is that she was harmed by each act in the series. We do not think

she was entitled to ride out the storm and lump sum her grievances." *Id.* at 674.

Plaintiff contends the continuing-tort doctrine, nonetheless, applies here because he seeks recovery for a single, continuous pattern and policy of discrimination by Defendant based on Plaintiff's deafness.  Plaintiff, therefore, asserts his harm, in fact, stems from the overall pattern or practice of the discrimination rather than discrete incidents of Defendant failing to accommodate his deafness by providing effective communication.

According to Defendant, however, the continuing-tort doctrine does not apply here because there was not any singular, continuous policy or practice that Defendant followed regarding Plaintiff's hearing disability, and, in fact, the accommodations provided to Plaintiff by Defendant evolved over the course of Plaintiff's 14-year incarceration.

The Court concludes this case presents a difficult application of the continuing-tort doctrine because Plaintiff's characterizations of the nature of his claim are inconsistent; *i.e.*, at times Plaintiff characterizes the harm as arising from the cumulative effects of 14 years of Defendant's failure to ensure Plaintiff's ability to communicate, but at other times Plaintiff is specific about individual harms that resulted from specific failures to accommodate his deafness.  For example, in

his argument that his claims for noneconomic damages are not barred by Oregon Revised Statute § 30.650, Plaintiff contends he suffered economic loss because he was not afforded the same work opportunities as other inmates and was not sufficiently accommodated in order to take advantage of certain educational opportunities. *See infra* Section I(C). Thus, Plaintiff's assertions that Defendant's various failures to accommodate him in particular contexts caused distinctly identifiable types of damages is inconsistent with Plaintiff's contention that he seeks in Claim One to redress a single, continuous violation of § 659A.142(5). *See Barrington*, 164 Or. App. at 296-97 (the continuing-tort doctrine does not apply when a series of actions are "separately actionable because they individually caused harm.").

Moreover, Plaintiff's Claim One implicates several actions that a factfinder would have to analyze separately to determine whether Defendant's conduct was unlawful. A factfinder, for example, could find Defendant reasonably accommodated Plaintiff's deafness through the use of an inmate interpreter in the context of a yoga class but Defendant unreasonably failed to accommodate Plaintiff's deafness by using inmate interpreters in the context of a disciplinary proceeding. Like the plaintiff in *Davis*, therefore, Plaintiff's claim here does not rest on the type of single, continuous action to which

19- OPINION AND ORDER

the continuing-tort doctrine applies because the various allegedly discriminatory actions for which Plaintiff seeks recovery are separately actionable and require separate elemental analyses. *See Davis*, 282 Or. at 674.

Accordingly, on this record the Court concludes the continuing-tort doctrine does not apply to Plaintiff's Claim One, and, therefore, the Court grants in part Defendant's Motion insofar as Plaintiff's Claim One is limited to Defendant's alleged failure to accommodate Plaintiff's disability on or after September 23, 2013, pursuant to Oregon Revised Statute § 30.275(2).

### 2.   Claim Two – 42 U.S.C. § 12132

Defendant contends Plaintiff's Claim Two under Title II of the ADA is time-barred as to actions that occurred before May 5, 2013 (one year before Plaintiff filed his Complaint) because the ADA provides for a one-year statute of limitations under Oregon Revised Statute § 659A.875(6). Plaintiff, on the other hand, contends the two-year limitations period in Oregon Revised Statute § 12.110(1) applies to his ADA claim, and, in any event, the continuing-tort doctrine applies to his Claim Two.

### a.   Applicable Statute of Limitations

"Title II of the ADA does not contain an express statute of limitations." *Sharkey v. O'Neal*, 778 F.3d 767, 770 (9th Cir. 2015). Accordingly, the court "borrow[s] the statute

of limitations applicable to the most analogous state-law claim."
*Id.*

Defendant contends the statute of limitations that applies to the most analogous state-law claim is the one-year limitations period contained in § 659A.875(6).  Plaintiff, however, contends the two-year personal-injury statute of limitations in § 12.110(1) applies.  *See Ramirez v. Parker*, No. 3:13-cv-01772-AC, 2014 WL 7187463, at *11 (D. Or. Dec. 16, 2014).  *See also T.L. ex rel. Lowry v. Sherwood Charter Sch.*, No. 3:13-cv-01562-HZ, 2014 WL 897123, at *8-*9 (D. Or. Mar. 6, 2014).

As with its analysis as to Claim One, however, the Court concludes § 659A.875(6) is not the state-law statute of limitations most analogous to Plaintiff's Claim Two because § 659A.875(6) applies specifically to employment-discrimination claims.  In addition, although the Court agrees with Plaintiff that § 12.110(1) may apply to the ordinary Title II case, the Court concludes the state-law claim most analogous to Plaintiff's Claim Two is one brought under § 659A.142(5).  As noted, Plaintiff's action is brought against a state agency, and, therefore, the Court concludes the two-year statute of limitations contained in § 30.275(9) is the statute of limitations most relevant to Plaintiff's Claim Two.

b.   Continuing-Tort Doctrine

As in Claim One, Plaintiff contends he may seek damages for ADA violations that occurred outside of the two-year statutory period because the continuing-tort doctrine applies to Claim Two.

As noted, the continuing-tort doctrine permits a plaintiff to seek recovery for acts that took place outside of the statutory period. *See Cherosky v. Henderson*, 330 F.3d 1243, 1245-46 (9th Cir. 2003). The continuing-tort doctrine, however, does not apply to "discrete discriminatory acts . . . even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). *See also Davis v. Tri-County Metropolitan Transp. Dist. of Oregon*, No. 3:12-cv-00808-SI, 2015 WL 4403529, at *3 (D. Or. Jul. 17, 2015). "A discrete discriminatory act consists of conduct that 'occurred' on the day it 'happened,' which includes, for example, 'termination, failure to promote, denial of transfer, or refusal to hire.'" *Davis*, 2015 WL 4403529, at *3 (quoting *Morgan*, 536 U.S. at 114). Even when a plaintiff asserts a "series of discrete acts [that] flow[] from a company-wide, or systematic, discriminatory practice, . . . each incident of discrimination constitutes a separate actionable" violation. *Cherosky*, 330 F.3d at 1247.

In *Cherosky* the defendant denied the 1994 and 1997 requests of postal workers to wear respirators in the workplace.

*Id.* at 1244-45.   In 1998 the plaintiffs filed a lawsuit under the Rehabilitation Act, 29 U.S.C. §§ 701, *et seq.*, but they had not first consulted with a counselor at the Equal Employment Opportunity Commission within 45 days of the 1994 or 1997 denials as required by 29 C.F.R. § 1614.105(a)(1).   *Id.* at 1245.   The plaintiffs contended the 45-day consultation requirement did not bar their lawsuit because the defendant's denial of their use of respirators in the workplace was a continuing violation.   The court held the continuing-violation doctrine did not apply because "[t]he individualized decisions are best characterized as discrete acts, rather than as a pattern or practice of discrimination" even though "these discrete acts were undertaken pursuant to a discriminatory policy."   *Id.* at 1247.

For many of the same reasons that this Court noted with respect to Claim One, Defendant's alleged ADA violations in Claim Two are best characterized as "discrete acts" that were "undertaken pursuant to a discriminatory policy" (or lack thereof), but that are, nonetheless, independently actionable. *See id.*   The fact that many of the alleged discriminatory actions require different elemental analyses and could yield differing findings as to whether Defendant violated the ADA underscores the discrete nature of Defendant's allegedly discriminatory actions.

Accordingly, on this record the Court concludes the continuing-violation doctrine does not apply to Plaintiff's

23- OPINION AND ORDER

Claim Two, and, therefore, only those alleged ADA violations that took place on or after May 5, 2012 (two years before Plaintiff instituted this action) fall within the statute of limitations.

**C.   Availability of Noneconomic Damages as to Claim One**

Defendant contends Plaintiff's Claim One must be dismissed as to all damages claims because Plaintiff cannot obtain noneconomic damages without making a showing that he suffered economic damages as a result of Defendant's allegedly unlawful actions.

Oregon Revised Statute § 30.650 provides:  "Noneconomic damages . . . may not be awarded to an inmate in an action against a public body unless the inmate has established that the inmate suffered economic damages."

Plaintiff contends § 30.650 does not bar his claim for noneconomic damages in Claim One because (1) he is no longer an "inmate" within the meaning of § 30.650 (he was released from Defendant's custody after instituting this action), and, therefore, § 30.650 does not apply, and (2) he has suffered economic loss in the form of lost "points" and future earning potential.

The parties do not cite and this Court has not located any case that has explicitly addressed whether § 30.650 applies to a plaintiff who is incarcerated at the time the plaintiff institutes the action, but is released before any damages are

awarded.[2]

The Court notes § 30.650 "imposes a condition on the recovery of noneconomic damages in those kinds of actions." *Voth v. State*, 190 Or. App. 154, 160 (2003).  Accordingly, § 30.650 "recognizes implicitly the capacity of an inmate to sue for both economic and noneconomic damages," but § 30.650 "operates to bar the *award* of noneconomic damages unless the inmate also establishes that he or she suffered economic damages." *Id.* at 160 (emphasis in original).

Statutory interpretation under Oregon law "entails three sequential levels of analysis to determine the legislature's intent." *State v. Gaines*, 346 Or. 160, 164 (2009)(citing *PGE v. Bur. of Labor and Indus.*, 317 Or. 606, 610-12 (1993)).  "First, the court examines the text and context of the statute." *Gaines*, 346 Or. at 164.  Second, the court will consider legislative history "after examining text and context, even if the court does not perceive an ambiguity in the statute's text, where that legislative history appears useful to the court's analysis." *Id.*

---

[2]  Defendant cites *Quesnoy v. Oregon*, No. 3:10-cv-01538-ST, 2011 WL 5439103, at *4 (Nov. 4, 2011), and *Orr v. Peterson*, No. 3:14-cv-00898-AC, 2015 WL 2239635, at *6 (May 12, 2015), for the proposition that courts in this district have held § 30.650 applies to an inmate who is released from custody during the pendency of the lawsuit.  Although those courts appear to have assumed § 30.650 applies in such circumstances, they did not analyze the issue.  Accordingly, this Court does not find those cases particularly helpful in deciding the contested question whether § 30.650 applies to a plaintiff who is incarcerated when the action is filed, but is released before any award of damages.

at 172. "If the legislature's intent remains unclear after examining legislative history, 'the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty.'" *Id.* at 164-65 (quoting *PGE*, 317 Or. at 612). Nonetheless, "the 'cardinal rule' of statutory construction [is] that a court 'shall pursue the intention of the legislature if possible.'" *Gaines*, 346 Or. at 165 (quoting *Holman Transfer Co. v. City of Portland*, 196 Or. 551, 564 (1952)).

On this record the Court finds the most natural reading of the text of § 30.650 is that the statute does not apply to a plaintiff who was an inmate when the case was filed but was released before the action reached the stage at which damages might be awarded because § 30.650 appears to focus on the time at which damages are awarded rather than when any such action is instituted. *See* Or. Rev. Stat. § 30.650 ("Noneconomic damages . . . *may not be awarded* to an inmate in an action against a public body unless the inmate has established that the inmate suffered economic damages.")(emphasis added). This reading is consistent with the Oregon Court of Appeals statement in *Voth* that § 30.650 "operates to bar the *award* of noneconomic damages unless the inmate also establishes that he or she suffered economic damages." 190 Or. App. at 160. Nonetheless, because this is not the only possible conclusion to draw from the plain

meaning of the statute and because *Voth* did not address the meaning of § 30.650 in any context that is closely analogous to the issue presented in this case, the rules of statutory interpretation require the Court to look to the legislative history for clues as to the legislature's intent.

The parties, however, did not address the legislative history of § 30.650 and that legislative history is not readily available to the Court.   The Court, therefore, does not have the requisite information before it to resolve properly this novel and important issue of state law.   Accordingly, the Court declines to rule presently on the applicability of § 30.650 to this matter and grants the parties leave to seek such a ruling after properly briefing and presenting a comprehensive statutory-interpretation analysis.

In any event, even assuming at this stage that § 30.650 applies to Plaintiff's Claim One, the Court concludes Plaintiff has established there is a genuine dispute of material fact as to whether Plaintiff suffered economic damages within the meaning of § 31.710(2)(a), and, therefore, Defendant has not established at this stage that Plaintiff is precluded from recovering noneconomic damages under § 30.650.   Oregon law defines "noneconomic damages" as "subjective, nonmonetary losses, including but not limited to pain, mental suffering, emotional distress, humiliation, injury to reputation, loss of care,

comfort, companionship and society, loss of consortium, inconvenience and interference with normal and usual activities apart from gainful employment." Or. Rev. Stat. § 31.710(2)(b). "Economic damages" are defined as:

> [O]bjectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less.

*Id.* § 31.710(2)(a).

Here Plaintiff has shown there is a genuine dispute of material fact as to whether he has suffered economic damages. For example, Plaintiff submits evidence that he was unable to obtain a higher-paying job during his incarceration and was unable to participate in job-training classes as a result of Defendant's failure to accommodate his deafness. VanValkenburg Decl. (#54). The Court concludes this is sufficient to create a genuine dispute of material fact as to whether Plaintiff suffered "loss of income and past and future impairment of earning capacity." *See* Or. Rev. Stat. § 31.710(2)(a).

Accordingly, on this record the Court concludes § 30.650 does not bar Plaintiff's claim for noneconomic damages as to Claim One at this stage of the proceedings because there exists a

28- OPINION AND ORDER

genuine dispute of material fact as to whether Plaintiff suffered economic damages.  As noted, however, the Court grants leave to the parties to submit further argument and a comprehensive analysis as to whether § 30.650 applies to Plaintiff's Claim One on a briefing schedule to be later determined.

**D.    PLRA Requirements as to Claim Two**

Defendant contends it is entitled to summary judgment on Plaintiff's Claim Two under the PLRA because (1) Plaintiff cannot recover any emotional-distress damages under 42 U.S.C. § 1977e(e) as to Claim Two because he did not suffer any physical injury as a result of Defendant's alleged discrimination and (2) Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).

1.    <u>Emotional-Distress Damages</u>

As noted, Defendant first contends Plaintiff cannot recover damages for any mental or emotional injury under § 1997e(e) without demonstrating that he suffered a physical injury.

Section 1997e(e) provides:  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act."

Plaintiff contends his claims for emotional-distress

29- OPINION AND ORDER

damages as to Claim Two are not barred by § 1997e(e) because
(1) he is no longer a prisoner; (2) this action is not a "Federal
civil action" within the meaning of § 1997e(e) because Plaintiff
originally filed his action in state court; and (3) Plaintiff has
made a "prior showing" of physical injury.

> a.   Whether Plaintiff's action was "brought" by a
>      "prisoner" within the meaning of the PLRA

As noted, Plaintiff contends his claim for
emotional-distress damages in Claim Two is not barred by
§ 1997e(e) because Plaintiff is no longer a "prisoner" within the
meaning of the PLRA.  Plaintiff asserts this action was not
"brought" by a prisoner because he filed his Second Amended
Complaint on March 18, 2015, after he was released from
Defendant's custody.  Plaintiff relies on *Cano v. Taylor* for the
proposition that under the PLRA the "date of the filing [of the
amended complaint] is the proper yardstick" for determining when
Plaintiff "brought" the relevant action.  739 F.3d 1214, 1220
(9th Cir. 2014).

Defendant contends *Cano* only permits "*claims* which
are added to a suit" in an amended complaint to avoid the
requirements of the PLRA, and, therefore, Plaintiff's Claim Two
is subject to the PLRA physical-injury requirement because Claim
Two preexisted the filing of Plaintiff's Second Amended
Complaint.  *See Cano*, 739 F.3d at 1221 (emphasis added).  *See
also Rhodes v. Robinson*, 621 F.3d 1002, 1006 (9th Cir.

30- OPINION AND ORDER

2010)("[T]he new claims in Rhodes' [second amended complaint] were 'brought' within the meaning of § 1997e on March 20, 2006, when he tendered that complaint for filing with his motion for leave to file an amended complaint."). Here Defendant contends Plaintiff's Claim Two was "brought by a prisoner" within the meaning of § 1997e(e) at the time that Plaintiff filed the original complaint because "'an action is 'brought' for purposes of § 1997e(a) when the complaint is tendered to the district clerk.'" *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006)(quoting *Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004)). Although *Vaden* addressed the PLRA exhaustion requirement in § 1997e(a), Plaintiff, nevertheless, contends the same rule should apply to the identical operative statutory language in § 1997e(e).

Implicit in *Cano* and *Rhodes* is the principle that the "action" to which § 1997e applies is claim-specific, and, therefore, the "action" was "brought" when the Plaintiff filed the complaint that first raised that claim. In this case, however, Plaintiff brought Claim Two in his original Complaint (#1-2) filed in the Multnomah County Circuit Court on May 5, 2014, while Plaintiff was indisputably a prisoner. Thus, the Court agrees with Defendant that *Cano* and *Rhodes* are distinguishable from this case because, unlike the plaintiffs in those cases, Plaintiff did not bring any new claims in his Second

31- OPINION AND ORDER

Amended Complaint.

Accordingly, the Court concludes Plaintiff "brought" Claim Two for purposes of § 1997e on May 5, 2014, when he filed his Complaint in Multnomah County Circuit Court and while he was still a "prisoner" within the meaning of the PLRA.

> b.   Whether Plaintiff's Claim Two is a "Federal civil action" within the meaning of § 1997e(e)

Plaintiff contends the physical-injury requirement of § 1997e(e) does not apply to Claim Two because he originally brought Claim Two in state court, and, therefore, Claim Two was not a "Federal civil action" within the meaning of § 1997e(e) when it was first brought.  Plaintiff asserts the differing language between the exhaustion requirement of § 1997e(a) and the physical-injury requirement of § 1997e(e) indicates Congress only intended the latter to apply to lawsuits originally brought by a prisoner in federal court.  The exhaustion requirement of § 1997e(a) provides:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). On the other hand, § 1997e(e) provides:  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

Plaintiff contends § 1997e(a) by its plain terms applies to all actions brought under federal law but Congress's use of different language in § 1997e(e) (*i.e.*, "[n]o Federal civil action . . .") indicates Congress intended that requirement to apply only to claims brought by the prisoner in federal court.

According to Defendant, the "[n]o Federal civil action" language in § 1997e(e) "means all federal claims, including constitutional claims." *Napier v. Preslicka*, 314 F.3d 528, 532 (11th Cir. 2002)(citing *Harris v. Garner*, 216 F.3d 970, 984-85 (11th Cir. 2000)(*en banc*)). *See also Jacobs v. Pennsylvania Dep't of Corrections*, No. 04-1366, 2011 WL 2295095, at *23-*24 (Jun. 7, 2011)(collecting cases and holding "the plain meaning of the term 'Federal civil action' to mean an action in which civil claims over which the federal court has jurisdiction are brought, *i.e.*, all claims over which the court has original jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C.  § 1367.").

The cases on which Defendant relies, however, do not address the circumstances at issue here.  The *Napier* and *Harris* courts merely addressed whether § 1997e(e) applied to constitutional as well as statutory claims.  *Napier*, 314 F.3d at 532; *Harris*, 216 F.3d at 984-85.  Accordingly, those cases are not by themselves persuasive as to the issue in this case; *i.e.*, whether a prisoner plaintiff who brought a federal statutory

cause of action in state court has brought a "Federal civil action" within the meaning of § 1997e(e).  In *Jacobs* the court addressed a situation in which a prisoner plaintiff brought a state-law cause of action in federal court, and the court concluded § 1997e(e) applied to the plaintiff's state-law claim. 2011 WL 2295095, at *23-*24.  Accordingly, *Jacobs* is not directly applicable to the issue before this Court.

On the other hand, Plaintiff's reasoning in comparing the language of § 1997e(a) with § 1997e(e), although plausible on its face, is also unpersuasive.  Contrary to Plaintiff's contention that § 1997e(e) necessarily means something different from § 1997e(a), the "Federal civil action" language in § 1997e(e) can be read as shorthand for the following language in § 1997e(a):  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . ."  The statutory language, therefore, is ambiguous on its face.

When a statute is ambiguous, the court looks to legislative history and the statutory purpose to determine the meaning of the statute.  *Fang Lin Ai v. United States*, 809 F.3d 503, 512-13 (9th Cir. 2015).  Citing the Eleventh Circuit's decision in *Harris*, the Ninth Circuit has noted the physical-injury requirement is "intended to curtail frivolous prisoner litigation."  *See Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir.

34- OPINION AND ORDER

2002)(citing *Harris*, 216 F.3d at 977).  The Ninth Circuit in
*Oliver*, however, also cited the Second Circuit's decision in
*Dawes v. Walker* for the proposition that "'Congress intended
§ 1997e(e) to reduce the burgeoning volume of prisoner litigation
*in the federal courts*.'"  *Oliver*, 289 F.3d at 627-28 (quoting
*Dawes v. Walker*, 239 F.3d 489, 495 (2d Cir. 2001))(emphasis
added).  Thus, although the *Oliver* court found Congress intended
to curtail prisoner litigation that it deemed frivolous (*i.e.*,
actions brought by prisoners for emotional-distress damages
without any attendant physical injury), the Ninth Circuit did not
directly address the issue raised here:  Whether Congress
intended to bar prisoner litigation that it deemed frivolous or
whether it only intended to keep such lawsuits out of federal
courts and to leave it to the state courts to adjudicate such
claims.

     In any event, the Court concludes if § 1997e(e)
permitted prisoners to bring federal-law claims for emotional-
distress damages in state court without any showing of physical
injury, the legislative purpose would be frustrated because, as
in this case, any such claim ultimately could be removed to
federal court under 28 U.S.C. § 1331.  There is not any
indication in the statute or the legislative history that
Congress intended to close the front door to federal court for
such claims while leaving the back door open.

Accordingly, on this record the Court concludes Plaintiff's Claim Two is a "Federal civil action" to which the physical-injury requirement applies.

       c.   Whether Plaintiff has established a genuine dispute of material fact exists as to physical injury

In any event, Plaintiff contends he has sufficiently established a a genuine dispute of fact exists as to physical injury and, therefore, the Court should deny this part of Defendant's Motion.

To establish a physical injury sufficient to permit an action for emotional-distress damages under § 1997e(e), the plaintiff must prove a physical injury that is more than "*de minimis*," but it "'need not be significant.'" *Oliver*, 289 F.3d at 626-27 (quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)). *See also Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1124 (9th Cir. 2008). The Ninth Circuit has held medical conditions such as bed sores and bladder infections are sufficient to pass the *de minimis* physical-injury requirement. *Pierce*, 52d F.3d at 1224.

As noted, in his Second Amended Complaint Plaintiff omitted any allegation that he suffered a physical injury as a result of Defendant's alleged failure to accommodate Plaintiff's deafness. Plaintiff, nonetheless, points out that he testified in his deposition that he suffered two injuries related

to communication difficulties arising from the lack of
accommodations for his deafness: Plaintiff testified he was
punched in the stomach and in the back by another inmate in 2003
because he refused to pay other inmates $20 per week in exchange
for having closed-captioning on the television. Plaintiff also
testified he suffered a broken tooth in an altercation with
another inmate in either 2004 or 2005 that was caused by the
other inmate being angry that he did not get a job serving as
Plaintiff's noninmate interpreter. According to Plaintiff, these
incidents constitute a "prior showing of physical injury." *See*
42 U.S.C. § 1997e(e). Although Plaintiff acknowledges he does
not seek any damages for these incidents, he contends, without
citation to authority, that the physical injury does not have to
be an actionable part of his claim in order to satisfy the
physical-injury requirement of § 1997e(e).

      The Court disagrees. The physical injury that
Plaintiff relies on to satisfy the requirement of § 1997e(e) must
be "caused by" the unlawful actions that are the basis for the
recovery that Plaintiff seeks. *See Medcalf v. Sonnen*, 216 F.
App'x 665, 666 (9th Cir. 2007)("Medcalf points to no evidence of
any physical injury caused by the acts he claims violated his
constitutionally protected rights."). *See also Vega v. Nunez*,
No. LA CV 13-09530-VBF-E, 2014 WL 1873265, at *8 (C.D. Cal.
May 8, 2014)("As currently written, however, the complaint does

37- OPINION AND ORDER

not allege that plaintiff suffered any physical injury as a
result of the cell transfer."). As noted, Plaintiff can only
seek recovery for ADA violations that took place within the two-
year statute of limitations. The only physical injuries alleged,
however, took place between 2003 and 2005; *i.e.*, long before the
relevant statutory period. Accordingly, Plaintiff's alleged
physical injuries were not "caused by" any actionable ADA
violation, and, therefore, Plaintiff has not made any "prior
showing of physical injury" pursuant to § 1997e(e).

Accordingly, on this record the Court concludes
§ 1997e(e) precludes Plaintiff's claim for emotional-distress
damages as to Claim Two. The Court, however, does not dismiss
Claim Two in its entirety because, as with Claim One, Plaintiff
also seeks economic damages as a result of his alleged lost-
earnings capacity and lower compensation for work performed in
prison as a result of Defendant's alleged ADA violations.

2.   Exhaustion of Administrative Remedies

Section 1997e(a) provides:  "No action shall be brought
with respect to prison conditions under section 1983 of this
title, or any other Federal law, by a prisoner confined in any
jail, prison, or other correctional facility until such
administrative remedies as are available are exhausted." 42
U.S.C. § 1997e(a).

Defendant argues Plaintiff's Claim Two must be

38- OPINION AND ORDER

dismissed because Plaintiff failed to exhaust his administrative remedies as required by § 1997e(a). Plaintiff, on the other hand, contends Claim Two is not subject to the exhaustion requirement of § 1997e(a) because it was not "brought . . . by a prisoner" in light of the fact that Plaintiff was released from Defendant's custody before filing his Second Amended Complaint and, in any event, a genuine dispute of material fact exists as to whether Plaintiff met his exhaustion obligations.

The Court rejects Plaintiff's contention that Claim Two was not "brought . . . by a prisoner" for the same reason that Plaintiff's argument concerning identical statutory language failed under § 1997(e): *i.e.*, that Plaintiff was a prisoner at the time he filed Claim Two.

"Prisoners must . . . exhaust all 'available' remedies, not just those that meet federal standards." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014).

"[F]ailure to exhaust administrative remedies is an affirmative defense that the defendant must plead and prove in a PLRA case." *Albino*, 747 F.3d at 1175. "[D]efendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. After the defendant has carried that burden, "the burden

shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

"Section 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, No. 13-17119, 2016 WL 142601, at *2 (9th Cir. Jan. 12, 2016)(quoting *Woodford*, 548 U.S. at 90). "'[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.'" *Reyes*, 2016 WL 142601, at *2 (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)). "Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures.'" *Id.* at 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)).

Plaintiff's IDC dated June 3, 2013, is the only IDC that directly addresses the issues presented in this action and, therefore, Plaintiff's only relevant attempt at exhaustion. As noted, although the IDC was dated June 3, 2013, and Plaintiff listed the incident date as May 9, 2013, Defendant did not indicate the IDC had been received until January 29, 2014, after Plaintiff sent his January 28, 2014, kyte to Defendant inquiring

whether his June 3, 2013, IDC had been processed.  In any event, the parties dispute whether Plaintiff filed the IDC in June 2013 and Defendant failed to respond to it or whether Plaintiff failed to submit the IDC until January 2014.  In any event, on February 24, 2014, Defendant rejected Plaintiff's IDC on the ground that it was received more than 30 days after the date of the incident.  As noted, Plaintiff did not appeal the denial of his IDC, but instead he filed a tort-claim notice on March 21, 2014, and brought this action on May 5, 2014.

"A discrimination complaint received more than 30 days after the last date of the incident giving rise to the complaint will be rejected as untimely."  Or. Admin. R. 291-006-0031(2)(b). "A discrimination complaint that has been returned to the inmate by the discrimination complaint coordinator for procedural reasons cannot be reviewed.  An inmate may elect to resubmit the discrimination complaint if the procedural errors can be corrected."  Or. Admin. R. 291-006-0035(9).

When Defendant rejected Plaintiff's June 3, 2013, IDC as untimely, Plaintiff did not have any additional levels of review to pursue as to that IDC because, as noted, under Oregon Administrative Rule 291-006-0035(9) an IDC returned to the inmate "for procedural reasons cannot be reviewed."  If Plaintiff timely filed his June 3, 2013, IDC but Defendant failed to timely address it as a result of administrative error, therefore,

Plaintiff would have exhausted his administrative remedies as to the June 3, 2013, IDC because he would have complied with every procedural requirement applicable to him and sought every avenue of relief available with regard to that IDC.  The exhaustion doctrine does not require a prisoner to start the administrative process over again as a result of the defendant's administrative error.

If, on the other hand, Plaintiff failed to timely file his IDC and Defendant correctly rejected it as untimely,[3] Plaintiff would not have "adhere[d] to the 'critical procedural rules'" of the IDC process.  *See Reyes*, 2016 WL 142601, at *2 (quoting *Woodford*, 548 U.S. at 90).  Under Oregon Administrative Rule 291-006-0035(9) Plaintiff may have been able to correct this error if he had filed a new IDC alleging the same ADA violations, but he failed to do so.

On this record, however, Defendant has not established whether the delay in considering Plaintiff's June 3, 2013, IDC was caused by an administrative error on the part of Defendant or Plaintiff's failure to submit the IDC timely.  The Court, therefore, concludes a genuine dispute of material fact

---

[3] Plaintiff contends Defendant wrongly rejected the IDC as untimely even if it was not filed until January 2014 because the description of the reason for the complaint made it clear that the IDC addressed ongoing issues.  This argument is unpersuasive, however, in light of the fact that Plaintiff listed the date and time of the "incident" as May 9, 2013.

exists as to whether Plaintiff exhausted his administrative remedies as to Claim Two.

In summary, the Court concludes Plaintiff's claim for emotional-distress damages in Claim Two is barred by § 1997e(e). Accordingly, the Court grants Defendant's Motion as to Plaintiff's Claim Two on that basis. The Court, however, concludes a genuine dispute of material fact exists as to whether Plaintiff exhausted his administrative remedies and, therefore, denies Defendant's Motion as to the remaining portion of Plaintiff's Claim Two in which Plaintiff seeks economic damages.

## II. **Plaintiff's Motion (#72) for Partial Summary Judgment**

Plaintiff moves for partial summary judgment as to Defendant's liability on Claims One and Two (but not as to damages) on the basis that there is not any genuine dispute of material fact as to whether Defendant sufficiently investigated and accommodated Plaintiff's deafness.

Plaintiff contends the analyses on Claims One and Two are identical because Oregon Revised Statute § 659A.142 "shall be construed to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act of 1990." Or. Rev. Stat. § 659A.139(1). *See also Quesnoy*, 2011 WL 5439103, at *5-*7 (analyzing an ADA Title II claim together with a claim under § 659A.142).

"Pursuant to Title II of the ADA, a 'qualified individual

43- OPINION AND ORDER

with a disability' cannot, 'by reason of such disability, be
excluded from participation in or be denied the benefits of the
services, programs, or activities of a public entity, or be
subjected to discrimination by any such entity.'" *Pierce*, 526
F.3d at 1214 (quoting 42 U.S.C. § 12132).  "Generally, public
entities must 'make reasonable modifications in policies,
practices, or procedures when the modifications are necessary to
avoid discrimination on the basis of disability, unless the
public entity can demonstrate that making the modifications would
fundamentally alter the nature of the service, program, or
activity.'" *Pierce*, 526 F.3d at 1215 (quoting 28 C.F.R.
§ 35.130(b)(7)).  Whether an accommodation is "reasonable (or
even required) is necessarily a fact-specific inquiry, requiring
'analysis of the disabled individual's circumstances and the
accommodations that might allow him to meet the program's
standards.'" *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 910 (9th
Cir. 2013)(quoting *Wong v. Regents of Univ. of Cal.*, 192 F.3d
807, 818 (9th Cir. 1999)).  *See also Pierce*, 526 F.3d at 1217.

　　　　Plaintiff's contentions fall into three general categories:

> (1)　Defendant failed to undertake any investigation to
> determine how to provide Plaintiff with equal
> access to services.  *See Duvall v. Cnty. of
> Kitsap*, 260 F.3d 1124, 1136 (9th Cir. 2001)("[T]he
> ADA imposes an obligation to investigate whether a

requested accommodation is reasonable.").

(2)  Defendant failed to accommodate Plaintiff's
     disability when it failed to provide Plaintiff
     with a qualified American Sign Language (ASL)
     interpreter during intake and orientation; during
     medical, dental, and mental-health examinations;
     during religious services; during classes, job-
     training opportunities and other prison programs;
     during disciplinary proceedings; and during
     counselor meetings and assessments.

(3)  Defendant's use of unqualified inmate interpreters
     for many of the services provided to Plaintiff was
     insufficient as a matter of law.

Accordingly, Plaintiff contends he is entitled to summary
judgment as to Defendant's liability on both Claim One and Claim
Two.

     Defendant, on the other hand, contends Plaintiff is not
entitled to summary judgment because genuine disputes of material
fact exist as to the extent of Plaintiff's hearing disability
and, therefore, as to whether the accommodations were sufficient.
In addition, Defendant asserts Plaintiff fails to identify
specific instances of insufficient accommodation with respect to
many of Plaintiff's claims.

     As to Plaintiff's claim regarding Defendant's investigation

45- OPINION AND ORDER

of Plaintiff's hearing disability, the Court agrees genuine disputes of material fact exist as to whether Defendant's investigation was adequate.  For example, Debbie Allen, a counselor at Santiam Correctional Institution where Plaintiff was housed from May 2012 to February 2014, testified part of her job was to determine the communication needs of inmates based on a review of the inmate's file, her interactions with the inmate, and her experience assessing an inmate's ability to communicate. Whether this investigation was sufficient to gauge the extent of Plaintiff's hearing disability and the necessity of particular accommodations is a determination of fact that this Court cannot make on summary judgment.

Moreover, Defendant is also correct that on this record there remain genuine disputes of material fact regarding the extent of Plaintiff's hearing impairment.  Although Plaintiff has produced evidence (including expert opinion) that alternative forms of accommodation such as lipreading, spoken language, and writing are insufficient to adequately communicate with Plaintiff, Defendant presents evidence from which a rational jury could conclude such alternative forms of communication were sufficient for Plaintiff in practice including evidence that Plaintiff communicates with his family through some of these alternative forms because his family is unable to communicate through ASL.

46- OPINION AND ORDER

The Court, therefore, concludes Plaintiff has not established Defendant's accommodations were unreasonable.

On this record, therefore, the Court denies Plaintiff's Motion on the ground that genuine disputes of material fact exist that preclude summary judgment in favor of Plaintiff.

<u>**CONCLUSION**</u>

For these reasons, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion (#49) for Summary Judgment and Defendant's Second Motion (#64) for Partial Summary Judgment as follows:

1.   The Court **GRANTS** Defendant's Motion (#49) as to Plaintiff's claims for injunctive relief and **DISMISSES** those claims **with prejudice**;

2.   The Court **GRANTS** Defendant's Second Motion (#64) as to the statute of limitations on Plaintiff's Claim One and limits recovery on Plaintiff's Claim One to those instances of disability discrimination that occurred  on or after September 23, 2013;

3.   The Court **GRANTS in part** and **DENIES in part** Defendant's Motion (#64) as to the statute of limitations on Plaintiff's Claim Two and limits recovery on Plaintiff's Claim Two to those instances of alleged disability discrimination that occurred on or after May 5, 2012;

47- OPINION AND ORDER

4.    The Court **DENIES** Defendant's Motion (#49) as to Plaintiff's claim for noneconomic damages in Claim One; and

5.    The Court **GRANTS in part** and **DENIES in part** Defendant's Motion (#49) as to the limitations on Claim Two pursuant to the PLRA, 42 U.S.C. § 1997e, and **DISMISSES with prejudice** Plaintiff's Claim Two to the extent he seeks emotional-distress damages.

The Court also **DENIES** Plaintiff's Motion (#72) for Partial Summary Judgment in its entirety.

The Court directs the parties to confer and to submit **no later than February 16, 2016**, an updated, jointly proposed case-management schedule for the Court's consideration in which the parties address all further motion practice and proceedings needed before the filing of a final Pretrial Order and the scheduling of a firm jury-trial date, including any additional briefing regarding the applicability of Oregon Revised Statute § 30.650.

IT IS SO ORDERED.

DATED this 4th day of February, 2016.


                              /s/ Anna J. Brown

                              _____
                              ANNA J. BROWN
                              United States District Judge




48- OPINION AND ORDER