IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**DAVID D. VANVALKENBURG**,

        Plaintiff,

    v.

**OREGON DEPARTMENT OF CORRECTIONS**,

        Defendant.

No. 3:14-cv-00916-MO

OPINION AND ORDER

**MOSMAN, J.**,

        Plaintiff David VanValkenburg brought this suit against the Oregon Department of Corrections ("ODOC"), alleging violations of federal and state anti-discrimination laws while he was in custody. Mr. VanValkenburg's state-law claim was tried to a jury, beginning on November 1, 2016. The jury returned a verdict in favor of Mr. VanValkenburg, awarding him $400,000 in noneconomic damages [183]. On December 5, 2016, ODOC filed post-trial motions for judgment as a matter of law, a new trial, and remittitur [200]. Mr. VanValkenburg responded in opposition [203], and ODOC replied [209]. For the reasons explained below, ODOC'S motions are DENIED.

**I. BACKGROUND**

        Mr. VanValkenburg is a hearing-impaired individual who was housed at multiple prisons run by ODOC from 2000 to 2014. In 2014, he brought this case against ODOC based on allegations that it violated state and federal anti-discrimination laws when it failed to provide him

1 – OPINION AND ORDER

with accommodations for his hearing disability that would allow him to meaningfully participate in prison programs and services provided to inmates. Mr. VanValkenburg's claims were grounded in violations of federal and state anti-discrimination laws. He sought injunctive relief, economic, and noneconomic damages. After receiving full briefing on ODOC's Motion for Summary Judgment, this Court dismissed Mr. VanValkenburg's claims for injunctive relief, and his alleged emotional distress damages based on his Americans with Disabilities Act ("ADA") claim. The Court also narrowed the period of time from which Mr. VanValkenburg could recover damages to instances of discrimination that occurred on or after May 5, 2012, for his federal-law claim and September 23, 2013, for his state-law claim.

During a telephone oral argument on September 20, 2016, ODOC conceded that Mr. VanValkenburg was a qualified individual with a disability, and that his need for accommodation was obvious. But, ODOC contended that Mr. VanValkenburg's ADA claim was procedurally barred because he failed to exhaust his administrative remedies. As a result, on October 17, 2016, I held a bench-trial on the issue of exhaustion, where I found that he had not exhausted his administrative remedies, and dismissed Mr. VanValkenburg's ADA claim.

On November 1, 2016, a jury trial commenced on Mr. VanValkenburg's remaining state-law claim for alleged disability discrimination between September 23, 2013, and his release from prison in 2014. The issues for trial were whether the accommodations ODOC provided so that Mr. VanValkenburg could equally participate in its programs and services were reasonable, and whether further accommodations would have posed an undue burden on ODOC. Specifically, Mr. VanValkenburg alleged that he was discriminated against when ODOC (1) failed to provide him with effective communication for five medical appointments, (2) refused to consider his application to work in the prison canteen, (3) failed to provide him with effective communication

2 – OPINION AND ORDER

to participate in the "Road to Success" class, and (4) failed to provide him with equivalent access to the videophone system as hearing inmates had to prison phones. In presenting his case to the jury, Mr. VanValkenburg introduced documentary evidence, testimony from an expert witness, and testimony from a state-wide disability services coordinator. He also testified on his own behalf. ODOC moved for judgment as a matter of law before jury deliberations began. I DENIED ODOC's motion. After a three-day trial, the jury found in favor of Mr. VanValkenburg on these claims and awarded him $400,000 in noneconomic damages.

## II. ANALYSIS

Pursuant to Federal Rule of Civil Procedure 50, ODOC has renewed its motion for judgment as a matter of law. In the alternative, ODOC moves for a new trial under Federal Rule of Civil Procedure 59(a). Finally, ODOC moves for an order of remittitur and/or conditioning the denial of its motion for new trial on a reduction of the jury's damages award to $25,000 total. Mr. VanValkenburg objects to all three motions.

### A. Motion for Judgment as a Matter of Law

To succeed in their motion for judgment as a matter of law, the defendants must show that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a); *see also* Fed R. Civ. P. 50(b) (allowing for a renewed motion for judgment as a matter of law after trial). "[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The "court must draw all reasonable inferences in favor of the nonmoving party" and "give credence to the evidence favoring the nonmovant." *Id.* at 150-51. Judgment as a matter of law is appropriate when "the evidence, construed in the light most favorable to the nonmoving party permits only one reasonable

3 – OPINION AND ORDER

conclusion, and that conclusion is contrary to the jury's verdict." *Acosta v. City of Costa Mesa*, 718 F.3d 800, 828 (9th Cir. 2013). Additionally, the court must uphold the jury's verdict "if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).

After reviewing all of the evidence in the record, I have determined that the jury's verdict is supported by substantial evidence in the record. From the outset, it is important to note that ODOC conceded before trial that Mr. VanValkenburg's disability and need for accommodations were obvious. Thus, the questions for the jury were limited to whether ODOC's accommodations were sufficient, and, if not, whether further accommodations posed an undue burden on ODOC. Evidence presented to the jury supports Mr. VanValkenburg's claim that ODOC discriminated against him when it failed to (1) provide him with effective communication during five of his medical appointments, (2) consider him for the canteen position, (3) provide him with effective communication at the Road to Success class, and (4) provide him with equivalent access to the videophone as hearing people had to the prison phones.

As to the medical appointments, Mr. VanValkenburg's expert witness testified about his difficulty communicating by writing or lip-reading. At trial, ODOC did not dispute that prison medical staff used those methods of communication to communicate with Mr. VanValkenburg during the medical appointments at issue. Mr. VanValkenburg's testimony confirmed these facts and his preference for communicating through qualified sign language interpreters. In addition, Mr. VanValkenburg described the frustration, confusion, and fear that resulted from his inability to speak with and ask questions to his doctors. While ODOC suggested that providing a qualified ASL interpreter at these medical appointments would have posed an undue burden, this

evidence was disputed and other evidence suggested that ODOC failed to pursue other accommodations that were available. Accordingly, the jury's finding of discrimination as to Mr. VanValkenburg's medical appointments is supported by the record.

As to the canteen position, Mr. VanValkenburg introduced evidence of an inmate communication form that responded to his request to apply for an opening in the canteen. On the face of that form, the prison responded that he could not apply for the position because of his disability. Based on that statement and testimony from Ms. Carsner about ODOC's failure to investigate ways to accommodate Mr. VanValkenburg, the jury could find that ODOC discriminated against him. Although ODOC argued that he ultimately received a higher paying position, such evidence would only serve to undermine economic damages, which he did not seek at trial. Indeed, to support his claim for noneconomic damages, Mr. VanValkenburg testified about the mental anguish he experienced by not being allowed to apply for the position.

As to the Road to Success course, Mr. VanValkenburg testified that he was unable to take the class, which is intended to prepare incarcerated individuals for successful release, because he was not provided with a translator after requesting one at least twice. While ODOC tried to rebut Mr. VanValkenburg's testimony with documents that suggest he agreed to participate in one-on-one meetings with his counselor and parole officer instead of taking the course, Mr. VanValkenburg denied these claims. The jury was entitled to evaluate Mr. VanValkenburg's credibility and believe his testimony. Ultimately, substantial evidence in the record supports the jury's finding that ODOC discriminated against Mr. VanValkenburg as to his participation in this class.

Finally, as to the videophone usage, Mr. VanValkenburg testified that he had difficulty accessing it because it was kept in a locked room that was used for other purposes. He claimed

5 – OPINION AND ORDER

that he had to wait hours and sometimes days to use the phone, which he found very frustrating. He was also frustrated because hearing inmates had regular access to telephones in their unit. Evidence adduced at trial showed that ODOC eventually put the phone in a location near his unit, where he had easier access to it. While ODOC presented evidence to substantiate the need to keep the videophone in a locked room, the jury could find based on the evidence presented that ODOC discriminated against Mr. VanValkenburg by not providing him with easier access to the videophone. Accordingly, the jury's verdict is supported by substantial evidence in the record.

### B. Motion for a New Trial

A party moving for judgment as a matter of law under Rule 50(b) may also, in the alternative, file a motion for a new trial under Rule 59 of the Federal Rules of Civil Procedure. *Morris v. Walgreen Oshkosh, Inc.*, 3:14-cv-01718-ST, 2016 WL 1704320, at *2 (D. Or. April 28, 2016). The authority to grant a new trial under Rule 59 "is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). A court may order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed .R.Civ.P. 59(a)(1)(A). "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).

The Ninth Circuit has held that a new trial may be granted "'only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.'" *Id.* (quoting *Passantino v. Johnson & Johnson Consumer Prods.,* 212

F.3d 493, 510 n.15 (9th Cir. 2000)). In determining whether a verdict is contrary to the clear weight of the evidence, the court "has 'the duty . . . to weigh the evidence as [the court] saw it'" and may set aside the verdict even if it is supported by substantial evidence. *Id.* (quoting *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990)).

I do not find the jury's verdict to be contrary to the clear weight of the evidence. In addition, I do not find that a miscarriage of justice will ensue by failing to grant ODOC a new trial. Aside from reincorporating arguments about the sufficiency of the evidence from the motion for judgment as a matter of law, ODOC principally argues that a new trial should be granted because it was improper to exclude evidence of Mr. VanValkenburg's crime of conviction, because ODOC lacked notice of the discrete medical appointments Mr. VanValkenburg planned to take issue with at trial, and because Mr. VanValkenburg's closing argument improperly asked the jury to "send a message" and compensate all disabled persons.

Excluding evidence of Mr. VanValkenburg's crime of conviction has not created a miscarriage of justice. First, ODOC appears to forget that it agreed to exclude information about Mr. VanValkenburg's crime of conviction if he dropped his claim for economic damages, which he did. Thus, evidence about the crime was only admissible if Mr. VanValkenburg opened the door during his case in chief. Contrary to ODOC's argument, Mr. VanValkenburg's testimony about his feelings of emotional distress that resulted from the discrimination he faced did not open the door to his crime of conviction. The emotional distress testimony was all related directly to the discrimination he experienced—feelings of anxiety, frustration, anger, and humiliation. Pursuant to my pretrial rulings, ODOC could inquire about his ability to distinguish between emotional distress caused by the discrimination and emotional distress that came naturally from being incarcerated as a convicted felon. The jury did not need to understand the

7 – OPINION AND ORDER

nature of his crime to realize that many of those feelings could result from being incarcerated at all.  ODOC had the opportunity to make this argument, and the jury had the opportunity to consider it.  Accordingly, no miscarriage of justice will ensue without a new trial due to the jury's failure to learn of Mr. VanValkenburg's crime of conviction.

Second, ODOC has failed to articulate a clear theory for why a new trial should be granted on the grounds that it was unaware of which specific medical appointments Mr. VanValkenburg planned to pursue at trial.  The statute of limitations was set months before trial, which significantly narrowed the time period in question.  The five medical appointments that Mr. VanValkenburg pursued at trial were all within that statute of limitations.  While the narrowing of the number of medical appointments at issue occurred late in the case, it is unclear how this prejudiced ODOC, since it already had to investigate and prepare to respond to Mr. VanValkenburg's allegations of discrimination during these appointments; fewer appointments suggests less work for ODOC, not more.  Ultimately, ODOC does not argue it was unaware of any of the medical appointments at issue during the trial, or that any of the appointments were outside the statute of limitations.  Thus, there is no manifest unjustice with regard to the narrowing of the medical appointments.

Finally, ODOC argues that I improperly curtailed the introduction of evidence regarding the numerous other medical appointments that Mr. VanValkenburg attended during the relevant period.  ODOC argues this was manifestly unjust because it improperly precluded ODOC from showing that Mr. VanValkenburg communicated with medical staff on multiple occasions without ASL interpreters.

As an initial matter, ODOC already conceded that Mr. VanValkenburg's need for an accommodation was obvious.  In addition, Mr. VanValkenburg conceded he did not need a

8 – OPINION AND ORDER

qualified interpreter in all communications, especially those that were fairly simple and straight forward.  Accordingly, I sustained Mr. VanValkenburg's objection to this line of testimony under Rule 403 of the Federal Rules of Evidence because I determined that the probative value was substantially outweighed by a danger of unfair prejudice and the evidence was cumulative. ODOC had already introduced evidence about various medical appointments that were not at issue in the case, from which it laid the foundation to argue that Mr. VanValkenburg was able to communicate with medical providers without an ASL interpreter.  The jury could properly weigh all of the evidence in the case and determine whether ODOC provided Mr. VanValkenburg with effective communication during the five medical appointments at issue in the case.

### C. Motion for Remittitur

In deciding Defendant's Motion for Remittitur, I must determine whether the motion is governed by federal law or Oregon law.  Under federal law, a court may conditionally grant a defendant's motion for a new trial unless the plaintiff agrees to a reduced damages award, also known as a remittitur.  *See Hetzel v. Prince William Cty., Va.*, 523 U.S. 208, 211 (1998); *see also Morgan v. Woessner*, 997 F.2d 1244, 1258 (9th Cir. 1993) (explaining that a court cannot order reduced damages without providing plaintiff with the option for a new trial on the issue of damages).  In general, a "motion for remittitur of a jury verdict is subject to the same standard as a motion for new trial under FRCP 59."  *Morris,* 2016 WL 1704320, at *3; *see also Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278 (1989) (explaining that Rule 59 applies to motions for a new trial and remittitur).  In federal question cases, federal courts "allow substantial deference to a jury's finding of the appropriate amount of damages . . . unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based

9 – OPINION AND ORDER

only on speculation or guesswork." *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996).

In federal cases based on diversity jurisdiction, however, state substantive law determines whether a jury verdict is excessive or inadequate. *Browning-Ferris Indus.*, 492 U.S. at 278-79; *see also Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 430-31 (1996). To the extent that Oregon law differs from federal law in determining whether the jury's damages award was appropriate, I must follow Oregon law in this case.

Article VII, Section 3 of the Oregon Constitution limits a court's discretion to award a remittitur. It states: "[n]o fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict." Or. Const. art. VII, § 3; *see also Van Lom v. Schneiderman*, 210 P.2d 461, 465 (Or. 1949) (explaining that Oregon courts do not have the common-law power to re-examine the evidence and set aside a verdict because it was excessive) *overruled on other grounds by DeMendoza v. Huffman*, 51 P.3d 1232 (Or. 2002). Thus, in determining whether to grant a motion for remittitur in this case, I must ask whether there is *no evidence* to support the damages award. That appears to be a higher bar than determining whether the damages award is "grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Del Monte Dunes*, 95 F.3d at 1435.

ODOC argues that the jury's award for noneconomic damages is improperly high. ODOC suggests $10,000 is an appropriate amount of noneconomic damages for its discrimination in regard to Mr. VanValkenburg's medical appointments, which equates to $2,000 per visit. In addition, ODOC suggests a noneconomic damages award of $5,000 is appropriate for discriminating against Mr. VanValkenburg with regard to the Road to Success class; $5,000

10 – OPINION AND ORDER

is appropriate for discriminating against Mr. VanValkenburg in his application to work in the Canteen; and $5,000 is appropriate for discriminating against Mr. VanValkenburg with regard to his access to the videophone.  In sum, ODOC argues that total noneconomic damages award should be reduced to $25,000.

ODOC has not provided me with a principled basis for determining that there is *no evidence* to support the damages award.  In theory, I agree that it is extraordinary for the jury to award damages in excess of that requested by a plaintiff, and under the federal standard, I may be persuaded to grant the motion for remittitur on the grounds that the award is grossly excessive.  It is also theoretically possible under Oregon law for a jury to award such an extremely high amount of compensatory damages that it simply would not be supported by the evidence presented at trial.  But, ODOC has not provided me with a principle upon which I can find that is the case here.  Instead of proposing a reasonable damages award that is linked to the evidence presented at trial, ODOC simply substitutes its own judgment for that of the jurors and argues that a substantially smaller damages award is appropriate.  ODOC's proposed damages award, which is approximately 6% of what the jury awarded, is nothing more than conjecture and guesswork in and of itself.

Testimony from Mr. VanValkenburg's expert witness and from Mr. VanValkenburg provided evidence from which a jury could conclude that he experienced, and will continue to experience, mental pain and suffering as a result of the discrimination he experienced.  Thus, there is some evidence in the record to support the jury's non-economic damages award.  In closing argument, Mr. VanValkenburg's attorneys argued that $140,000 was "a good starting place" when thinking about appropriate compensation for the "mental suffering and emotional distress" he has and will suffer in the future.  But, in his Second Amended Complaint [43], Mr.

11 – OPINION AND ORDER

VanValkenburg sought $450,000 in compensatory damages for his state and federal claims. While the complaint included more instances of discrimination than were presented to the jury, which may substantiate a higher damages award, I cannot substitute my own opinion for the jury and find that there was no evidence to support the jury's damages award. Accordingly, ODOC's Motion for Remittitur is DENIED.

## CONCLUSION

For the reasons stated above, Defendants' Motions for Judgment as a Matter of Law, New Trial, and Remittitur [200] are DENIED.

IT IS SO ORDERED.

DATED this   8th   day of February, 2017.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
Chief United States District Judge